And now we have United States v. Carpenter. Mr. Roy. Thank you, Judge. For the recording, I'll say again, Attorney Michael Roy on behalf of Appellant Seldrick Carpenter, this court should vacate Mr. Carpenter's revocation judgment and remand with instructions to hold the jury trial under either the Sixth Amendment or Article III. Perhaps you could begin with the Sixth Amendment argument. Absolutely, Judge. So we discussed the issue of how much Hayman sort of disturbed the circuit's precedent in the last case. I'd like to focus instead on the substantive merits of our Sixth Amendment argument. First, I think the historical analogy between supervised release and recognizances is pretty clear. I'm sure some of you have heard complaints from your clerks, perhaps, about reading through these ancient cases from the 1700s. But our briefing in the amici brief really lays out the main overlap between revocation of supervised release and forfeitures of recognizance. And I think the government and us were on a lot of common ground here. We all agree that they were imposed, at least in some cases, post-judgment in criminal cases. Can you just pause for one second? Do you think that that analysis is compelled here? I'm not so sure that we have to get to it because of Hayman. Hayman is a K case. This is an E3583E3 case. And if you view Justice Breyer's concurring opinion as the most narrow of opinions when you're comparing the plurality and the concurring opinion, Justice Breyer doesn't express any Sixth Amendment concern at all with 3583E3. And so that leaves me. This is an E3 case. Our precedent controls. Maybe if it was a K case, our precedent would be called into question. So why is it that we have to go back and look at founding-era history here? Why don't we just stand on our precedent? So two responses to that, Judge. The first is, it's no secret that we have eyes towards certiorari eventually. Obviously, the Ninth Circuit, the federal defender of the office in that court, too, this is something that's going on around the country. We're hoping that somewhere, one of these cases, the Supreme Court will take it up eventually. In terms of where we're at right now, yes, Justice Breyer's concurrence is the controlling opinion on the holding, which we agree is narrow. And we also agree that Hamand, even if you were to just look at our favorite opinion from Hamand, Justice Gorsuch's plurality, that doesn't bind this court to agree with us. That's also narrow. No Supreme Court binds this court. It doesn't bind Justice Gorsuch. Right. Exactly. This is still an open question, even at the Supreme Court level. It's only at the circuit level that this has been decided. And it's the combination of the four justices from the plurality opinion saying that we should look at the structural differences plus the four justices in Justice Alito's dissent saying that we should look at historical analogs. Those combined together to say that this court should rethink its precedent at the circuit level. Then on the actual merits of the argument, if this court has any specific questions about whether recognizances were truly similar to supervised release or not, I know the government disputes some. I think they're fairly superficial aspects of recognizances versus supervised release. As the Supreme Court made clear in Bruin, we're not looking for an identical case. We're looking for something that's analogous. There's not going to be anything that's exactly the same as this large scale sort of industrialized supervised release that we have now. They didn't have large administrative apparatuses when they drafted the Constitution. But at least as recognizances were used in criminal proceedings, they were very similar to supervised release. I think Bruin, the case we cite in the reply, is a good example of exactly the same situation here. Someone got their recognizance post-criminal conviction. Upon forfeiture, they had a jury trial. I also think that the history of why the jury right disappeared from recognizances overlaps well with Justice Gorsuch's opinion about the structural difference between supervised release and parole versus probation. As Yamiki points out, once courts started moving towards laying a case on file, which was essentially suspending a sentence, that's where they stopped having jury trials for revocations. That's what was eventually then codified into parole or probation. And the big difference between supervised release versus parole or probation is that supervised release, the defendant always serves their entire prison sentence at the outset. There's never any prison sentence left for them to serve. Then that's different than parole, where they have a suspended prison sentence. They're going back to serve the remainder. Different than probation, at least as it was described in Gangman, where the trial court had imposed a prison sentence, a specific prison sentence, suspended it, and then put the person on probation. So revocation was sending them back to serve the remainder of that time. Going back to, Judge Scudder, your points earlier about how K is different. Subsection K is different than subsection E. There are going to be a wide range of facts patterns on revocations of supervised release. Subsection K is the version that has the most obvious apprendi problem, because it's a statute saying mandatory prison time. It's very similar to other apprendi cases. There's also middle grounds, like if someone is sentenced to the maximum prison time for their original prison sentence, and then upon revocation, any revocation is necessarily going to be giving them prison time beyond that maximum prison sentence. And admittedly, Carpenter's case is in the sort of category that would require the broadest interpretation of the Sixth Amendment, in that he's not going to be revoked and sent in for time that's beyond the maximum prison time he could have gotten for his original prison sentence. But I think Justice Gorsuch's plurality points towards why the Sixth Amendment is still implicated, in that it's not just that he's serving a total aggregate prison time between his original sentence and revocation sentence that is beyond the maximum. It's that he's already served a prison sentence, and it's a separate new prison sentence that he's being sent to upon revocation. And it's that new prison sentence that requires a jury. I mean, obviously there's a lot we could discuss about the Sixth Amendment. If this court has any specific questions about any aspect of our Sixth Amendment argument, I'd be happy to answer them. Otherwise, I would take the Thank you, Judge. Our Article III argument is a novel argument. It has not been addressed by this court before. It has, as far as I'm aware, not been addressed by any court of appeals. It's also pending in the Ninth Circuit in Bowers, a very similar Article III argument. And we respectfully disagree with the government that this court's precedent in, say, McIntosh is controlling on our Article III argument. The McIntosh panel and every other panel in this court who's talked about the applicability of the Sixth Amendment to revocations of supervised release, none of those panels were asked to consider whether Article III had a separate jury right. When I looked at this, Mr. Roy, I very much thought it's not all that surprising that you haven't seen this litigated and talked about because of the Supreme Court's decision in 1888 in Kahlon v. Wilson, that it effectively resolved it by, through its discussion there, the relationship between what the Sixth Amendment was doing vis-a-vis the provision in Article III. Sure. That's what, so I thought it's, Article III is not conferring any independent jury right that extends beyond or adds to, supplements anything in the Sixth Amendment that way. I think I read Kahlon slightly differently. And it's that, it's true, Article III does not supplement any protections for how the jury should look beyond the Sixth Amendment. But I mean, as the court said in Kahlon, the Sixth Amendment didn't supplant Article III. There's still, both provisions are still active. Article III grants the jury right, a jury right generally, whereas the Sixth Amendment is focused on features of the jury rights, which is also what the Supreme Court explained in later cases in Williams and Smith. And I think it's true, Kahlon doesn't really say exactly what the Article III portion protects. So it fairly could be read as saying, yes, Article III grants the jury right, the Sixth Amendment then flushes it out, explains it. But it also does say in Kahlon that how Article III was a broad guarantee of the jury right. And it explicitly says in Kahlon that it does not necessarily include the protections of the Sixth Amendment. So unless Article III is a complete, the Article III jury clause is a complete nullity, it must protect something. And our argument is that it is the broad common law right to a jury, at least some sort of jury, might look like the one we get in criminal cases now, might not look like one that we get in criminal cases now. That's also, I think, in keeping with the various founding documents that we cited in our opening and our reply, discussing when there was arguments about whether the Sixth Amendment was necessary or not. Several founders were explaining that Article III was drafted specifically to create a jury right that was as broad as possible, allow Congress to flush out the details on what that jury right looks like. But the jury right would apply whenever the government was coming down as a party against a citizen. And it's also reflected in the text of the two clauses, Article III saying that this is a provision that applies to all crimes, whereas the Sixth Amendment says that it applies only to criminal prosecutions. Granted, those are similar-sounding clauses, but it is slightly narrower under the Sixth Amendment. Unless this Court has further questions, I will reserve the remainder for my rebuttal. Certainly, Mr. Roy. Mr. Kinstra. May it please the Court. Good morning, Your Honors. Jeff Kinstra on behalf of the United States. The defendant has fallen far short of providing the sort of compelling reason that would be necessary for this Court to not only overturn its own precedent, but also break with the unanimous view of all the other courts of appeals. This Court has expressly held that there is no constitutional right to a jury trial and revocation proceedings. It's equally held, more broadly as to the Sixth Amendment in general, that the Sixth Amendment simply does not apply to revocation hearings because those hearings are not criminal prosecutions. To get past that precedent, the defendant would have to first show a compelling reason for this Court to reexamine its own precedent, and also provide the quite solid justification that this Court requires to create a new circuit split. And putting those together, particularly given the depth and well-settled nature of the precedent here, is a truly extraordinary request and something that the defendant hasn't come near meeting. The only intervening decision the defendant cites is the Supreme Court's decision in Haymond, which, of course, the specific provision it issued there was only 3583K. The controlling opinion in Haymond is that of Justice Breyer. That's the only one that has any precedential value at all. And as Your Honors have recognized, that opinion expressly really reinforces this circuit's precedent in its view of supervised release. It states that the role of a judge in a supervised release proceeding is consistent with traditional parole. Mr. Keenstra, Haymond is an E-K, a K case. We have an E case in front of us. What if we're talking about subsection G, mandatory revocation for possession of controlled substance or firearm, or for refusal to comply with drug testing? Does the mandatory nature of the use of shall in subsection G change the analysis? No, and a couple courts of appeals have addressed that since Haymond, and their answer has been no, because even then, the three aspects that the controlling opinion in Haymond said were necessary to its conclusion are not present there. That even though there is a mandatory revocation, it doesn't have to be a criminal offense, and I think more notably, it doesn't have to be a five-year mandatory minimum. And even under G, it says shall, revoke, but even a single day suffices there. And so, for example, the day that a person appears on a summons to the revocation hearing is a day of credit, so it doesn't actually require any jail time beyond the date of the revocation hearing. And the three aspects that were necessary to the controlling Haymond opinion, Justice Breyer's opinion, are absent there. So, of course, this case doesn't squarely present the G question. There are some nuances there that make it perhaps a little bit closer of a case, but this is exactly what Justice Breyer described as the ordinary revocation, an E3 revocation where it's not mandatory to revoke, it doesn't have to be a criminal offense, and there's no mandatory minimum sentence. I think Justice Breyer's opinion is best rated not as saying that the Sixth Amendment applies to some revocations, but as saying that 3583K itself, in substance at least, is not a revocation at all, that it's a new criminal prosecution because of those three features, but with 3583, they're simply the equivalent of parole, just as Justice Breyer said, and therefore not subject to the Sixth Amendment. Now, the defendant relies primarily on Justice Gorsuch's opinion, which has no precedential weight, and I think most notably about that opinion is it explains on page 2384 exactly why a person in Carpenter's exact position would not be entitled to a jury trial, and that's because the combination of sentences imposed originally and upon a revocation is still well within the range authorized by the jury verdict, which here is up to 30 years. Justice Gorsuch's opinion said that only in the very rare case where essentially a defendant has already been maxed out on the prison sentence authorized by the jury verdict or guilty plea, only in those very rare cases would there be any Sixth Amendment concern. So in the vast majority of cases, that's the opinion's grounds, the vast majority, there would be no right to a jury trial, and that's exactly the case here. So I think Justice Gorsuch considers that, he views that the Sixth Amendment does apply, but he recognizes that even then, a revocation hearing would be essentially the equivalent of a sentencing hearing, where the jury verdict is already authorized a sentence within a particular statutory range, the court is simply deciding where within that authorized range to impose a term of imprisonment or re-imprisonment, and so even then, in the ordinary revocation cases, there would be no right to a jury trial. So under the views of all nine justices in Hayman, then, Harfinder would lose. He would not be entitled to a jury trial, which makes this case a very poor vehicle for the defendant to ask this court to upset settled circuit precedent, break from the unanimous view of all the other courts of appeals. Essentially, Justice Gorsuch's opinion would get to the exact same end point, albeit through a slightly different analytical path, but the defendant here would still not be entitled to a jury trial. With recognizances, of course, there's a lot of ground to cover. Judge Scudder, to your point, I don't think it's necessary for the court to get there. This court settled precedent, the controlling opinion in Hayman to make things rather clear from the government's perspective. Briefly, though, recognizances really lack any of the defining features of supervised release, which are what means that supervised release itself is not a criminal prosecution, it does not come with a jury trial, and that's that supervised release can only be imposed on a person who's already been convicted and sentenced, that any revocation is part of the penalty of the original offense, and that any consequence or sentence is already been authorized by a jury verdict. None of those three things are true for recognizances, which did not need to be imposed following a jury verdict. In fact, they could even be imposed on people who have been acquitted of the offenses. So it's not something that they've already received the right to a jury verdict or a jury trial. It's not a penalty that's already been authorized by the underlying criminal conviction. It didn't need to be a criminal conviction at all. Unless your honors have any further questions, the government asked this court to affirm. Thank you. Thank you, counsel. Anything further, Mr. Roy? Thank you, Judge. I'd like to just really quickly say, I know, Judge Scudder, you were asking about if circuit precedent binds this court to continue to hold that the Sixth Amendment does not apply. I would ask if any member of the panel is persuaded by the merits of the substantive argument but feels that this has to be decided by the Supreme Court or should be going en banc instead to say that or write separately to say that. As I said, it's no secret that we have eyes towards a higher decision. I will just briefly address the government's point that their argument that the plurality opinion also supports their makes the best argument for us. As the four justices in the dissent pointed out, the reasoning of Justice Gorsuch's opinion points towards one direction, and that's that all revocations of supervised release would require a jury trial. Obviously, we agree with you, Judge Easterbrook, that policy is not at issue here. Our argument is based on the text of the Constitution and the historical analysis. However, since the government has raised policy arguments and as Justice Alito also raised policy arguments in his dissent, I do want to point out that this would not be a sky is falling moment if the court was to rule in our favor. The vast majority of revocation violations are already admitted, just like the vast majority of initial prosecutions are, guilty please. If the government is in a position where it's also doing the same sort of plea bargaining for revocations that it does for initial prosecutions, I'm positive that the number of admitted violations would go up. Unless this court has any further questions, then I'll see the rest of my time. Thank you, counsel. The case is taken under advisement. Case number four.